899 F.2d 1495
 133 L.R.R.M. (BNA) 3086, 66 A.F.T.R.2d 90-5716,
91-1 USTC P 50,022, 115 Lab.Cas. P 10,189
 Martin J. HUGHES, Plaintiff-Appellant/Cross-Appellee
(87-4052 & 87-4125),
v.
UNITED STATES of America, Defendant-Appellee/Cross-Appellant.
UNITED STATES of America, Respondent (87-4069),
v.
Martin J. HUGHES, Petitioner.
 Nos. 87-4052, 87-4069 and 87-4125.
 United States Court of Appeals,
Sixth Circuit.
 Argued Oct. 6, 1989.
Decided April 4, 1990.
Rehearing and Rehearing En Banc Denied May 21, 1990.
 
 Percy Squire, Marshall L. Lerner, Jerry O. Allen and Catherine A. Ballard, Columbus, Ohio, for appellant.
 John J. Siegel and Christian Stickan, Asst. U.S. Atty., Cleveland, Ohio, and Merritt C. Deitz, Jr. (Hughes), Sebree, Ky., for appellee.
 Michael P. Butler, Asst. Pros. Atty., Cleveland, Ohio, for amicus curiae.
 Before BOGGS and NORRIS, Circuit Judges, and ENGEL, Senior Circuit Judge.
 ALAN E. NORRIS, Circuit Judge.
 
 
 1
 Defendant, Martin J. Hughes, appeals from his conviction on twelve counts of a thirty-seven-count indictment charging him with various federal criminal offenses. The government also appeals the district court's decisions acquitting defendant on two of the counts and reducing his conviction to a lesser included offense on another count. For the reasons stated below, we affirm the district court's judgment in part and reverse in part.
 
 I.
 
 2
 On May 6, 1986, the grand jury issued a thirty-seven-count indictment against defendant, a district vice-president for the Communications Workers of America, AFL-CIO ("CWA"), charging him with mail fraud, embezzlement, falsification of union records, aiding and assisting in the filing of false W-2 and W-3 forms with the Internal Revenue Service ("IRS"), and with making false statements to the United States through the submission of falsified labor reporting documents. The government alleged that defendant submitted to the CWA International office expense vouchers that falsely claimed reimbursement for mileage and meal expenses for union employees. The government alleged that defendant received nearly $400,000 in reimbursement funds from the CWA International and used those funds to make political contributions and to pay salaries at the United Telephone Credit Union ("UTCU").
 
 
 3
 Specifically, the government charged defendant in Counts 1 through 6 and Counts 19 through 23 with mail fraud, in violation of 18 U.S.C. Sec. 1341. Counts 7 through 12 and Counts 24 through 28 charged defendant with embezzlement, in violation of 29 U.S.C. Sec. 501(c). Counts 13 through 18 and Counts 29 through 32 charged defendant with falsification of union records, in violation of 29 U.S.C. Sec. 439(c). Counts 33 through 35 charged defendant with aiding and assisting in the filing of false W-2 and W-3 forms to the IRS, in violation of 26 U.S.C. Sec. 7206(2). Finally, Counts 36 and 37 charged defendant with making false statements to the United States through the submission of false labor reporting documents, in violation of 18 U.S.C. Sec. 1001.
 
 
 4
 The case proceeded to trial on July 1, 1987. Before the case was sent to the jury, the district court dismissed Counts 1 through 12 and Counts 19 through 28, the mail fraud and embezzlement charges. After the case had been submitted to the jury, the court dismissed Count 35, one of the tax charges, because of a typographical mistake in the indictment. The jury returned guilty verdicts on each of the remaining counts.
 
 
 5
 Defendant then moved for acquittal on Counts 33, 34, 36, and 37. The court acquitted defendant of the felony charges in Counts 36 and 37, finding as a matter of law that false statements made by defendant were not material. The court also reduced defendant's conviction of a felony under 26 U.S.C. Sec. 7206(2) to the lesser included misdemeanor under 26 U.S.C. Sec. 7204 in Count 33. The court refused to reduce the felony conviction under section 7206(2) in Count 34.
 
 
 6
 Defendant was sentenced to two years' probation and fined $10,000.
 
 
 7
 The government appeals the district court's action in acquitting defendant on Counts 36 and 37, and reducing the felony conviction on Count 33.
 
 
 8
 Defendant appeals the district court's decisions denying his motions for acquittal on Count 34, for recusal, for mistrial, and to dismiss the entire indictment in light of the holding in McNally v. United States, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987).
 
 II.
 
 9
 A. The False Statement Counts Under 18 U.S.C. Sec. 1001
 
 
 10
 The government contends that the district court erred in acquitting defendant on the felony charges under 18 U.S.C. Sec. 1001 in Counts 36 and 37, when it concluded as a matter of law that false statements made by defendant were not material.
 
 
 11
 Section 1001 is a general prohibition against falsifying information given to government agencies, and provides:
 
 
 12
 Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious, or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.
 
 
 13
 Although the statute explicitly mentions materiality only in the first clause, courts have read such a requirement into the second clause as well "in order to exclude trivial falsehoods from the purview of the statute." United States v. Abadi, 706 F.2d 178, 180 (6th Cir.), cert. denied, 464 U.S. 821, 104 S.Ct. 86, 78 L.Ed.2d 95 (1983). Under section 1001, a false statement to a federal agency is material even if it does not actually influence a decision of the agency, so long as it has a natural tendency to influence or is capable of influencing a decision of the agency. United States v. Chandler, 752 F.2d 1148, 1151 (6th Cir.1985).
 
 
 14
 However, materiality "is not an element of the offense that must be proved beyond a reasonable doubt but a 'judicially imposed limitation to ensure the reasonable application of the statute.' " Chandler, 752 F.2d at 1151 (quoting Abadi, 706 F.2d at 180 n. 2). Accordingly, "materiality is a question of law for the court to decide." United States v. Keefer, 799 F.2d 1115, 1126 (6th Cir.1986). "A materiality determination is subject to complete review on appeal and is not controlled by the clearly erroneous standard." Chandler, 752 F.2d at 1151.
 
 
 15
 In this case, the jury found that the defendant made false statements to the Department of Labor when he caused the CWA to file false LM-2 reports. These are the annual reports that unions are required to file disclosing, among other things, the salary and expenses of each employee who receives more than $10,000 during the year. See 29 U.S.C. Sec. 431(b)(3). Evidence demonstrated that the LM-2 reports filed by the CWA for 1982 and 1983 contained false entries showing Gay Griffith, the manager of UTCU, as a CWA employee who received $7,995 in 1982 and $10,540 in 1983 as reimbursement for expenses. In fact, these amounts were paid to Griffith as salary and were generated by the false expense vouchers filed with the CWA at the direction of defendant.
 
 
 16
 The district court found that the false statements were not material. The district court took into consideration that the total amount paid to Griffith was correctly stated, that the misstated amounts were small in relation to the union's total expenses, and the testimony of a labor department official that the chief purpose for requiring these figures was to call attention to persons who were being paid by more than one union and to "adequately describe" the total amount the union paid to each employee. The court also relied upon the fact that the false statements had no effect on any determinations by the Department of Labor, even though the court also noted that the government need not prove such an effect to sustain a conviction under section 1001. Finally, the court considered the fact that Congress had also included in the Labor Management Reporting and Disclosure Act a prohibition against making material false representations in documents required by the Act, but provided that a violation would be punished as a misdemeanor, rather than a felony. 29 U.S.C. Sec. 439. The court acknowledged that the United States Supreme Court, in United States v. Batchelder, 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979), held that if two separate laws cover certain criminal activity, the government may prosecute under either law. However, the district court felt that the existence of a misdemeanor statute covering the making of false statements to the Department of Labor was relevant in determining the issue of materiality.
 
 
 17
 The district court erred in concluding that the false statements were immaterial. The statements were clearly of the type capable of influencing the Department of Labor's information-gathering and regulatory decision-making process. Since Congress specifically required a union to disclose the amounts it disburses in salary and reimbursement expenses for each employee who receives over $10,000, and the LM-2 form provided by the Department of Labor requires the union to separately list the amounts given to an employee for salary and for reimbursed expenses, it follows that a false reporting of information specifically required to be disclosed is material.
 
 
 18
 The fact that the misstated amounts are relatively small when compared with total union expenditures is not particularly relevant to the issue of materiality. Instead, the relevant inquiry is whether the false information is of the type that is capable of influencing a decision of an agency, as opposed to an examination of the magnitude of the falsehood. See United States v. Norris, 749 F.2d 1116, 1121-22 (4th Cir.1984) (false inclusion of $650 in expense statement totalling $35,584 is material), cert. denied, 471 U.S. 1065, 105 S.Ct. 2139, 85 L.Ed.2d 496 (1985). Similarly, the district court's reliance upon the fact that Congress also provided that essentially identical conduct could also be punished as a misdemeanor is misplaced, especially in view of the court having acknowledged that "the false statements do rise to the level of materiality required" to violate the misdemeanor statute. Since the government may bring a prosecution for making a false statement to the Department of Labor under either 18 U.S.C. Sec. 1001 or 29 U.S.C. Sec. 439, see United States v. Batchelder, 442 U.S. at 123-24, 99 S.Ct. at 2203-04, and no different standard for determining materiality is set out in the statutes, there is no basis for concluding that a statement that is material under 29 U.S.C. Sec. 439 is not also material under 18 U.S.C. Sec. 1001.
 
 
 19
 Accordingly, we reverse the district court's decision acquitting defendant on Counts 36 and 37 of the indictment. Upon remand, the court is instructed to reinstate the jury's felony convictions on these Counts, and to resentence defendant accordingly.
 
 B. The False W-2 and W-3 Forms
 
 20
 The government contends that the district court erred in reducing defendant's Count 33 felony conviction under 26 U.S.C. Sec. 7206(2) to a misdemeanor conviction under 26 U.S.C. Sec. 7204. Defendant contends that the district court erred by refusing to also reduce his felony conviction in Count 34 to a misdemeanor.
 
 1. Count 33
 
 21
 In Count 33, the government charged defendant with aiding and assisting in the filing of a false W-3 wage transmittal form with the IRS. 26 U.S.C. Sec. 6051(a) provides that an employer who is required to deduct and withhold taxes from its employees must furnish to each employee a statement, the W-2 form, that sets forth the amount of wages the employee earned and the amount withheld in taxes. 26 U.S.C. Sec. 6051(d) provides that the employer must also file a duplicate of the statement with the IRS. This duplicate is the W-3 form.
 
 
 22
 26 U.S.C. Sec. 7206(2) provides, in pertinent part, that a person is guilty of a felony if he
 
 
 23
 [w]illfully aids or assists in, or procures, counsels, or advises the preparation or presentation under, or in connection with any matter arising under, the internal revenue laws, of a return, affidavit, claim, or other document, which is fraudulent or is false as to any material matter, whether or not such falsity or fraud is with the knowledge or consent of the person authorized or required to present such return, affidavit, claim, or document.
 
 26 U.S.C. Sec. 7204 provides that:
 
 24
 In lieu of any other penalty provided by law (except the penalty provided by section 6674) any person required under the provisions of section 6051 to furnish a statement who willfully furnishes a false or fraudulent statement or who willfully fails to furnish a statement in the manner, at the time, and showing the information required under section 6051, or regulations prescribed thereunder, shall, for each such offense, upon conviction thereof, be fined not more than $1,000, or imprisoned not more than one year, or both. (Emphasis added.)
 
 
 25
 In reducing defendant's section 7206 felony conviction to a section 7204 misdemeanor offense, the district court concluded that section 7204 provides the exclusive sanction against an employer for submitting a false W-3 statement to the IRS and that it was a lesser included offense of that defined in section 7206.
 
 
 26
 The government argues that section 7204 deals exclusively with statements furnished to employees and does not cover the filing of a false W-3 form with the IRS, pointing to the language in that section providing that it is the exclusive sanction for persons who furnish a statement required to be furnished under section 6051 and that, while section 6051(a) provides that an employer shall furnish a W-2 to each employee, it provides that the W-3 statement shall be filed with the IRS.
 
 
 27
 While we agree with the government that section 7204 clearly is meant to provide the exclusive sanction for an employer who furnishes an employee with a false W-2 statement, we do not agree that there is any linguistic distinction between furnishing and filing statements that compels our adopting its conclusion that the section does not apply when an employer files a false W-3 form. The W-3 form filed with the IRS is merely a duplicate of the W-2 statement furnished to the employee. When an employer furnishes an employee a false W-2, he necessarily files a false W-3 with the IRS. Under section 6051, an employer is responsible for both forms W-2 and W-3. Accordingly, we would render useless Congress' intent to punish as a misdemeanant a person who provides false information on a statement required by section 6051, if we were to hold that the government may charge an employer with a felony for filing a false W-3 form with the IRS.
 
 2. Count 34
 
 28
 In Count 34, the government alleged that defendant violated section 7206(2) when he did "willfully aid and assist in, and procure, counsel and advise the preparation and presentation to the Internal Revenue Service of a Form W-2 Wage and Tax Statement for Gay Griffith by the Communications Workers of America." The district court held, and the government now concedes, that defendant could not have violated section 7206(2) merely by furnishing Griffith with a false W-2 form, since section 7204 provides the exclusive sanction for this act. However, the district court also found that the jury could have reasonably concluded that defendant took other steps in counseling Griffith to understate her income on her tax return and, therefore, the court refused to reduce defendant's felony conviction under section 7206(2).
 
 
 29
 However, a fair reading of the evidence would not permit the jury to conclude that defendant took any action with respect to the filing of Griffith's tax return other than causing the CWA to furnish her with a false W-2 form. Griffith expressly denied that defendant gave her any advice concerning the filing of her tax return.
 
 
 30
 Accordingly, we affirm the district court's decision reducing defendant's Count 33 felony conviction to a misdemeanor conviction, and reverse the court's denial of a similar reduction with respect to Count 34. Upon remand, the district court is instructed to vacate defendant's Count 34 felony conviction and to enter a misdemeanor conviction on that Count and resentence defendant accordingly.
 
 C. The Recusal Motion
 
 31
 On two occasions, defendant moved for recusal or disqualification of the district judge, the Honorable Ann Aldrich. In his motions, defendant filed an affidavit stating that, at defendant's request, President Carter signed the final documents approving the appointment of the Honorable George White to the bench of the Northern District of Ohio one day earlier than he signed Judge Aldrich's commission, giving Judge White greater seniority. Judge Aldrich acknowledged that Hughes was responsible for her "lesser seniority" but, nonetheless, denied the motions.
 
 
 32
 Under 28 U.S.C. Secs. 144 and 455, a judge must recuse herself if a reasonable, objective person, knowing all of the circumstances, would have questioned the judge's impartiality. See Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 108 S.Ct. 2194, 2203-05, 100 L.Ed.2d 855 (1988); United States v. Story, 716 F.2d 1088, 1090-91 (6th Cir.1983). Given the marginal nature of the benefits that a judge receives by having greater seniority, we believe that, under the circumstances of this case, a reasonable, objective person, knowing all the circumstances, would not have questioned Judge Aldrich's impartiality. The "benefits" of which Judge Aldrich was supposedly deprived by her lesser seniority are, in the case at hand, truly de minimis based upon the evidence presented. Based upon the large number and pattern of appointment of judges in the Northern District of Ohio, it is quite implausible that either Judge White or Judge Aldrich would ever become chief judge, with whatever perquisites that might imply. There is not the slightest hint that whatever precedence has existed in items such as office selection, etc., has been of any significance either in fact, or in the estimation of either judge. Thus, it is quite clear that under the circumstances of this case, a reasonable, objective person, knowing all the circumstances, would not have questioned Judge Aldrich's impartiality.
 
 
 33
 Accordingly, we affirm the district court's decision denying defendant's motions for recusal or disqualification.
 
 D. Defendant's Other Contentions
 
 34
 Defendant also contends that the district court erred in denying his motion for a mistrial and denying his motion to dismiss the entire indictment in light of the holding in McNally v. United States, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). We believe that defendant's arguments with respect to these issues are without merit, and we, therefore, affirm the district court's decisions on these remaining issues
 
 III.
 
 35
 For the foregoing reasons, the judgment of the district court is affirmed in part and reversed in part, and this cause is remanded for further proceedings consistent with this opinion.