1 F.3d 1242
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jose Antonio GARCIA-IBANEZ, Defendant-Appellant.
 No. 91-6393.
 United States Court of Appeals, Sixth Circuit.
 Aug. 9, 1993.
 
 Before: KEITH and RYAN, Circuit Judges; and WELLFORD, Senior Circuit Judge.
 RYAN, Circuit Judge.
 
 
 1
 The defendant, Jose Antonio Garcia-Ibanez, appeals from the judgment entered against him following a jury trial in which he was convicted of several drug-related offenses. On appeal, he argues that the evidence was insufficient to convict him on two of the counts in the indictment, and also argues that the district court plainly erred in admitting certain documents into evidence.
 
 
 2
 We conclude that the evidence was insufficient to convict the defendant of aiding and abetting the importation of marijuana, because there was an absence of proof that the marijuana in this case was actually imported. We therefore reverse that part of the district court's judgment. We are unpersuaded by the defendant's other assignments of error, however, and therefore affirm the remainder of the judgment.
 
 I.
 
 3
 Garcia-Ibanez[1] was indicted in 1991, along with six codefendants, in a nineteen-count indictment. Garcia-Ibanez was named in four of the counts, and indicted on one count each of conspiracy to possess more than 600 pounds of marijuana with intent to distribute, in violation of 21 U.S.C. Sec. 846 (Count 1); aiding and abetting interstate travel and promoting unlawful activity, in violation of 18 U.S.C. Secs. 2 & 1952(a)(3) (Count 17); aiding and abetting the possession and distribution of forty pounds of marijuana, in violation of 18 U.S.C. Sec. 2 & 21 U.S.C. Sec. 841(a)(1) (Count 18); and aiding and abetting the importation of approximately 600 pounds of marijuana into the United States, in violation of 18 U.S.C. Sec. 2 & 21 U.S.C. Sec. 841(a)(1) (Count 19). While five of the codefendants pled guilty and entered into plea agreements with the government, Garcia-Ibanez and one other codefendant proceeded to trial in June 1991.
 
 
 4
 Denver Doyle Perkins was a marijuana dealer from 1984 until he was apprehended in June 1990, and charged with attempted possession of fifty pounds of marijuana with intent to distribute. At this point, Perkins began cooperating with the government. Perkins encountered a man named Jesus Garza in 1984 or 1985, when he began buying marijuana from Garza in both Texas and in the Cincinnati area. It was through Garza that Perkins, in early 1990, became acquainted with the defendant, when Garcia-Ibanez travelled with Garza to the Cincinnati area and delivered approximately 100 pounds of marijuana to Perkins. Between January and June 1990, Perkins made four marijuana purchases of 100 pounds each from Garcia-Ibanez, Garza, and another codefendant. Perkins paid Garza directly on these deals, and Garza then settled up with Garcia-Ibanez.
 
 
 5
 After Perkins's arrest, he made approximately 120 consensually monitored telephone calls to both Garza and Garcia-Ibanez in order to arrange marijuana deals. In an October 1990 call, Garcia-Ibanez requested that Perkins send him $1,500 to purchase an automobile, in which he would install hidden compartments in order to bring marijuana to Perkins. In accordance with instructions from Garcia-Ibanez, Perkins sent $1,000 to Garcia-Ibanez's wife, and $500 to Garcia-Ibanez himself. In a call made in November 1990, Garcia-Ibanez told Perkins that he had to go to Brownsville before he could bring marijuana to Ohio, and then later told Perkins that someone had been sent south to Brownsville. A week and a half later, Garcia-Ibanez told Perkins that he had eighty pounds of "ruby red grapefruit," a code phrase for marijuana.
 
 
 6
 In conversations in late December 1990 and early January 1991, Perkins, Garza, and Garcia-Ibanez discussed payment by Perkins of $1,500 to Garza's wife, and delivery of thirty pounds of marijuana to Perkins. Garcia-Ibanez and Garza left for Corpus Christi to pick up this promised marijuana on January 16. The same day, however, a number of other codefendants were arrested in an intercoastal waterway near Corpus Christi for possession of twenty-five pounds of marijuana hidden in a boat. Garcia-Ibanez told Garza that the people in Corpus Christi had been arrested, and that he was going to post bail for one of the them. Documents were introduced at trial showing that an individual named Jose Antonio Garcia had posted bail for one of the arrestees. Garza, in turn, informed Perkins that their associates had been arrested with the marijuana that had been intended for Perkins.
 
 
 7
 Garcia-Ibanez and Garza were apparently able to get replacement marijuana, because later in January, Garza informed his wife that the two would be travelling to northern Kentucky to deliver marijuana to Perkins. Perkins received a call on January 28, alerting him that the two were en route from Texas to the Cincinnati area. Garza told Perkins that they were driving a green Subaru station wagon with Texas handicapped license plates. The two called Perkins again the next day; they discussed the price of the marijuana, and made arrangements to meet at a restaurant.
 
 
 8
 Perkins arrived, as scheduled, at the restaurant parking lot; with him was Special Agent Frank Kleier of the U.S. Customs Service. They found the car that had been described, and Garcia-Ibanez and Garza were in it. The latter two arranged to follow Perkins and Kleier to a motel in northern Kentucky. The four entered a room and discussed events since the previous May; this conversation was surreptitiously recorded by Agent Kleier. In this conversation, Garcia-Ibanez again said that they had been unable to make the scheduled trip on January 16 because their associates had been stopped by Customs and twenty-five pounds of marijuana had been seized.
 
 
 9
 The four then left the motel and headed for another location to effect the transfer of the marijuana. Garcia-Ibanez drove the station wagon with the marijuana in it, and when they stopped, Garza used tools provided by Agent Kleier to open the compartment in which the marijuana was hidden. As they removed the marijuana, Perkins cut open one of the packages and confirmed that they contained marijuana. After the transfer of the marijuana to Kleier's car, but without payment having been made, Garcia-Ibanez and Garza were arrested by agents who had been hidden in the area.
 
 
 10
 One of the contested fact issues in this case is the defendant's connection to a residence at 28 Casa Linda in Brownsville, Texas, which the government asserts was a distribution center for the conspiracy. A raid by the Brownsville Police Department took place there on June 26, 1990, and 1243 pounds of marijuana were seized. Garza testified that sometime in early 1990, he found Garcia-Ibanez working on a car in front of 28 Casa Linda. On another occasion, Garza and his wife went to the same address to find Garcia-Ibanez, but were unsuccessful. Garza's wife testified that her husband later told her that Garcia-Ibanez had told him, at some point after June 1990, that people had been arrested at that house, and that those people would not be able to make any more trips. And Garcia-Ibanez told Perkins, too, in the conversation that took place in the motel room immediately prior to his arrest, that people had been arrested in a house that belonged to Garcia-Ibanez and that 1200 pounds of marijuana belonging to Garcia-Ibanez had been seized. He also told Perkins that he personally had not been caught only because he was in court that day on a charge of driving under the influence. Court records were introduced at trial indicating that a man named Jose Antonio Garcia appeared in court in Brownsville on June 26, on a charge of driving while intoxicated.
 
 
 11
 At trial, Garcia-Ibanez made a motion for acquittal following the close of the government's proof, which was denied. He presented no evidence, and the jury returned with a guilty verdict against him, although his codefendant was found not guilty. Garcia-Ibanez received a sentence of 168 months' incarceration on Count 1, 60 months' incarceration on Count 18, and 168 months' incarceration on Count 19, all to run concurrently. He also received a sentence of four years' supervised release on Counts 1 and 19, and two years' supervised release for Count 18, all again to run concurrently. Finally, the court imposed a special assessment of $50 on each of the three counts.[2]
 
 
 12
 The defendant timely appealed following the court's judgment.
 
 II.
 
 13
 Although the government has not suggested that it does, we note as a preliminary matter that the concurrent sentencing doctrine does not apply in this case. This discretionary doctrine suggests that "[a] court should exercise its discretion not to review an issue where it is clear that there is no collateral consequence to the defendant and the issue does not otherwise involve a significant question meriting consideration." United States v. Hughes, 964 F.2d 536, 541 (6th Cir.1992), cert. denied, 113 S.Ct. 1254 (1993). As the Supreme Court has made clear, however, sentences are not in fact "concurrent" for the purposes of this doctrine when a district court has assessed a monetary charge on a defendant pursuant to 18 U.S.C. Sec. 3013. Ray v. United States, 481 U.S. 736, 737 (1987) (per curiam). Here, the district court imposed a $50 special assessment on Garcia-Ibanez on each count. Therefore, despite, as we discuss below, being unpersuaded by Garcia-Ibanez's argument that the evidence was insufficient to convict him on count 1, and although his sentences of incarceration and of supervised release would be unaffected by a reversal of his conviction on only one count, we must still review his sufficiency of the evidence challenge to count 19.
 
 A.
 
 14
 The defendant argues that there was insufficient evidence to support his conviction for aiding and abetting the importation of marijuana into Texas from Mexico, because there was no evidence that the marijuana was imported. Although the evidence showed that certain codefendants had been arrested near Corpus Christi with a boat containing twenty-five pounds of marijuana, there was no evidence to show that the marijuana had been transported from Mexico, nor that the boat had been outside the United States. Furthermore, the fact that the quantity of marijuana on board was small indicates that smuggling was not taking place.
 
 
 15
 The government appears to largely rely on a statement by a special agent[3] identified only as Guy Dupuis, who testified at trial that "[a]bout all of the marijuana currently seized in the Brownsville area originates in Mexico." The government then points to testimony indicating the defendant's involvement with the activities at 28 Casa Linda in Brownsville. It concludes that these two pieces of evidence established that the defendant caused narcotics to be brought into the United States from Mexico. The government also points to testimony by Perkins that he was buying Mexican marijuana from the defendant, and that he recognized the marijuana to be Mexican. Finally, the government points to the testimony of a special agent of the U.S. Customs Service that "drug smugglers will take small fishing vessels up the intercoastal waterways of Texas with drugs concealed in the hull and hidden compartments within the boats[,]" as establishing that the boat apprehended near Corpus Christi must have come from Mexico. Therefore, because it proved that the defendant was aware of the "foiled" endeavor near Corpus Christi, the government argues that it has proved he was involved with importing marijuana.
 
 
 16
 In reviewing a district court's denial of a motion for judgment of acquittal on a claim of insufficient evidence, "the relevant question is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). If the evidence is such that a reasonable mind might fairly find that a reasonable doubt is raised, this court must reverse a denial of an acquittal motion. United States v. Cordell, 924 F.2d 614, 618 (6th Cir.1991). In reviewing a sufficiency of the evidence claim, circumstantial proof is sufficient, and it is not necessary that circumstantial evidence remove every reasonable hypothesis except that of guilt. United States v. Stone, 748 F.2d 361, 363 (6th Cir.1984).
 
 
 17
 An essential element of the crime of importation is that the defendant be shown to have imported marijuana from another country into the United States. United States v. Samad, 754 F.2d 1091, 1096 (4th Cir.1984); see also, United States v. Rojas-Martinez, 968 F.2d 415, 420 (5th Cir.1991), cert. denied, 113 S.Ct. 828 (1992). Further, it must be imported knowingly and willfully, and the defendant must be shown to have willfully associated himself with the importation. Id.
 
 
 18
 A review of the transcript in this case supports the defendant's assertion: there is a complete absence of evidence showing that the marijuana at issue in this case was imported into the United States from Mexico. It borders on the preposterous for the government to argue that general statements by agents constitute sufficient evidence to establish that the specific marijuana at issue in this case was imported. Even if most of the marijuana in Brownsville does in fact come from Mexico, it is not sufficient evidence, even circumstantially, to allow a jury to conclude that because the defendant had marijuana in Brownsville, that particular marijuana must have come from Mexico. Thus, although the government is correct when it states there is sufficient evidence to connect Garcia-Ibanez with the activities at 28 Casa Linda, again, there is simply no evidence that the marijuana seized at 28 Casa Linda was imported from outside the United States. And the government is correct that there was sufficient evidence to show that Garcia-Ibanez was aware of the "foiled" endeavor near Corpus Christi, and yet the government's characterization of the endeavor as a "foiled import attempt" is without support in the record. Thus, if some drug smugglers use the intercoastal waterways to import drugs from Mexico, it is not sufficient evidence to allow a jury to conclude that the boat apprehended on an intercoastal waterway in this case came from Mexico.
 
 
 19
 Finally, Perkins's belief that he was buying Mexican marijuana is insufficient to support the conviction. If Perkins were a botanist, or if he had even described the difference in appearance between Mexican and other marijuana, his conclusions would be worthy of credence. As is stands, however, there is nothing in the record that could lead one to conclude that Perkins would be able to tell the difference between marijuana grown in Mexico and that grown in the defendant's backyard.
 
 
 20
 In short, the government failed to present evidence that could establish the first element of an importation charge: that the marijuana was in fact imported. We must, therefore, reverse the defendant's conviction on count 19 of the indictment.
 
 B.
 
 21
 The defendant next argues that the evidence presented at trial was insufficient to sustain his conviction for conspiracy to possess 600 pounds of marijuana with intent to distribute. He argues that the evidence showed multiple conspiracies, in some of which Garcia-Ibanez was not involved. Indeed, he concedes that "the government's evidence demonstrated a conspiracy between Garcia-Ibanez and Garza to supply Perkins with marihuana," but then argues that the government did not attempt to prove that conspiracy at trial. He asserts that the evidence brought forward by the government resulted in a variance between the charges in the indictment and the evidence presented at his trial, and that the presentation of evidence regarding those other conspiracies seriously prejudiced him.
 
 
 22
 If an indictment alleges one conspiracy, but the evidence can be construed as only supporting a finding of multiple conspiracies, a variance results. United States v. Warner, 690 F.2d 545, 548 (6th Cir.1982). However, even if a variance exists, it does not constitute reversible error "unless it prejudices [the defendant's] substantial rights." United States v. Guerra-Marez, 928 F.2d 665, 671 (5th Cir.) (quoted in United States v. Lee, 1993 U.S.App. LEXIS 8352 at * 14 (6th Cir. Apr. 20, 1993)), cert. denied, 112 S.Ct. 322 (1991).
 
 
 23
 The essential elements of the crime of conspiracy are:
 
 
 24
 (1) that the conspiracy described in the indictment was willfully formed, and was existing at or about the time alleged; (2) that the accused willfully became a member of the conspiracy; (3) that one of the conspirators thereafter knowingly committed at least one of the overt acts charged in the indictment, at or about the time and place alleged; and (4) that such overt act was knowingly done in furtherance of some object or purpose of the conspiracy as charged.
 
 
 25
 Lee, 1993 U.S.App. LEXIS 8352 at * 10 (citations omitted). In other words, "to sustain a conviction under 21 U.S.C. Sec. 846, the government is required to prove the existence of an agreement to violate the drug laws and that each conspirator knew of, intended to join, and participated in the conspiracy." Id. And "once the existence of a conspiracy has been proven, only slight evidence is necessary to implicate a defendant." Id. In fact, it is not necessary to show that a defendant even knew every member of the conspiracy or knew the full extent of the enterprise. United States v. Shermetaro, 625 F.2d 104, 108-09 (6th Cir.1980). Such evidence can be inferred from the interdependence of the enterprise. United States v. Bourjaily, 781 F.2d 539, 544 (6th Cir.1986), aff'd 483 U.S. 171 (1987). Along those lines, "if the government proves multiple conspiracies and a defendant's involvement in at least one of them, then clearly there is no variance affecting that defendant's substantial rights." Guerra-Marez, 928 F.2d at 672.
 
 
 26
 It is abundantly clear that the government put on sufficient proof of a large interrelated "chain" conspiracy involving the distribution of drugs between Texas and Kentucky, primarily in the form of the defendant's own words, which were recorded in the consensually monitored telephone calls with Perkins. The defendant's failure to point to any specific evidence that was prejudicial, or even to delineate the assertedly "multiple" conspiracies is illustrative of the lack of merit in his argument. It is true that the defendant was not actively involved in every overt act in this conspiracy, but is beyond peradventure that he was aware of every overt act.
 
 
 27
 In short, there was no variance between the indictment and the proof, because the proof showed one large conspiracy. There was, moreover, sufficient evidence linking the defendant to that conspiracy. The defendant's conviction on count 1 must therefore stand.
 
 C.
 
 28
 The defendant's final argument is that the district court erred in admitting copies of certain Texas court records. One record showed that a man named Jose Antonio Garcia paid the bond for one of the defendants arrested in the Corpus Christi incident, while another record showed that Jose Antonio Garcia was in court on a drunk driving charge at the time the house at 28 Casa Linda was raided. The defendant argues that there was no proof that the individual named in the documents was the same person as the defendant, and points out that there are 650 entries for the name "Garcia" in the Brownsville area alone. He cites Fed.R.Evid. 901 as the source of authority for this proposition. In response, the government analyzes the requirements of Fed.R.Evid. 901, and demonstrates that the documents were properly authenticated. The government ignores the defendant's central claim that there is no evidence that the defendant is the individual named in the documents.
 
 
 29
 This court reviews challenges to authenticity under Fed.R.Evid. 901 to determine if the district court abused its discretion in admitting the evidence. United States v. Hatfield, 815 F.2d 1068, 1074 n. 4 (6th Cir.1987). The defendant's argument is, however, more properly characterized as one directed at the relevance of the documents. This type of argument is also subject to review only for abuse of discretion. Zamlen v. City of Cleveland, 906 F.2d 209, 215 (6th Cir.1990), cert. denied, 111 S.Ct. 1388 (1991).[4]
 
 
 30
 It is apparent that if this court were to analyze the defendant's claim of error only under Fed.R.Evid. 901, it would have to affirm the district court's decision to admit the evidence, because the government met all the requirements of authentication under this rule. The defendant's assignment of error is, actually governed by Fed.R.Evid. 104(b), which discusses the problem of conditional relevancy:
 
 
 31
 Rule 104. Preliminary Questions * * *
 
 
 32
 (b) Relevancy conditioned on fact. When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition.
 
 
 33
 The relevance of the two challenged documents depends on the existence of a particular preliminary fact, namely, that the Jose Antonio Garcia named in the document is the same person as the Jose Antonio Garcia-Ibanez standing trial. See, e.g., Huddleston v. United States, 485 U.S. 681, 689-691 (1988). The Advisory Committee's Note to Rule 104 prescribes that
 
 
 34
 [t]he judge makes a preliminary determination whether the foundation evidence is sufficient to support a finding of fulfillment of the condition. If so, the item is admitted. If after all the evidence on the issue is in, pro and con, the jury could reasonably conclude that fulfillment of the condition is not established, the issue is for them. If the evidence is not such as to allow a finding, the judge withdraws the matter from their consideration.
 
 
 35
 56 F.R.D. 183, 196.
 
 
 36
 Taped conversations of the defendant and witness testimony corroborate that Garcia-Ibanez is the man named in the documents. He told various people both that he was in court on a drunk driving charge the day of the raid, and that he posted bond for one of the people arrested in the Corpus Christi incident. Furthermore, the coincidence of the names makes it likely that the two Jose Antonio Garcias are the same person. Thus, there was ample evidence to allow the judge to initially conclude that the evidence is sufficient to support a rational finding that the individual named is the defendant, and to then leave for jury determination the question of the identity of the individual named. It was, of course, open to the defendant to present any controverting evidence to the jury.
 
 III.
 
 37
 We REVERSE the district court's judgment as to Garcia-Ibanez's conviction for importation of marijuana, and AFFIRM the remainder of the judgment.
 
 
 
 [1]
 The defendant is also referred to in the record with the last name of "Garcia" only
 
 
 [2]
 The judgment does not impose a sentence for Count 17, which charged the defendant with aiding and abetting an unlawful activity in interstate commerce. The record does not disclose whether the defendant was found not guilty on this count or whether the court did not sentence him on the count for some other reason
 
 
 [3]
 The agency for which the agent works does not appear in the record
 
 
 [4]
 The government argues that the defendant failed to make this objection at trial. When a defendant fails to object to the admission of evidence at trial, the issue is not reviewable by the appellate court unless the admission was plain error affecting the defendant's substantial rights. United States v. Marino, 658 F.2d 1120, 1124 (6th Cir.1981). The parties have, however, failed to include all of the relevant pages of the transcript in the joint appendix, and we are therefore unable to determine whether the defendant did or did not articulate the challenge he now raises on appeal. We will assume that he has, and review for an abuse of discretion