56 F.3d 65
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Dewey Ratliff, Defendant-Appellant.
 No. 94-5219.
 United States Court of Appeals, Sixth Circuit.
 May 16, 1995.
 
 Before: JONES and BATCHELDER, Circuit Judges; JOINER, District Judge.*
 PER CURIAM.
 
 
 1
 The defendant, Dewey Ratliff,appeals the sentence he received after pleading guilty to transporting and receiving firearms in interstate commerce and dealing in firearms without a license, in violation of 18 U.S.C. Secs. 922(a)(1)(A) and 924(a)(1), during the period of August 18, 1990 through October 31, 1991. On February 8, 1994, District Court Judge Joseph M. Hood sentenced the defendant to twelve months of incarceration, two months of supervised release, and a $2,000 fine.
 
 
 2
 The Presentence Investigation Report (PSR) indicates that the defendant was a licensed firearms dealer from 1983 until 1988, when his license expired and was not renewed. The PSR also states that the defendant sold at least 92 firearms after his license expired. The defendant did not file any objections to the PSR.
 
 
 3
 On appeal, the defendant argues only that Judge Hood possessed extrajudicial information at sentencing and therefore should have recused himself under 28 U.S.C.A. Sec. 455(a) (West 1993) ("Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."). In reviewing a Sec. 455(a) claim, we determine whether "a reasonable, objective person, knowing all of the circumstances, would have questioned the judge's impartiality." Hughes v. United States, 899 F.2d 1495, 1501 (6th Cir.), cert. denied, 498 U.S. 980 (1990).
 
 
 4
 The defendant's claim involves the fact that a gun which he sold eventually was used to shoot a Kentucky State Trooper, David Ross. At the sentencing hearing, Judge Hood made the following statement regarding that incident:
 
 
 5
 [T]he one that really troubles me is on my birthday this past fall, Kentucky State Trooper David Rose [sic] was shot with a firearm that came from Mr. Ratliff's.
 
 
 6
 Why does this particularly trouble me? Well, Kentucky State Trooper Rose was across the street from my in-laws. And I saw when I was home in November, I saw them building a ramp into his house so that he could come in and come home again.
 
 
 7
 The defendant argues that this statement demonstrates that Judge Hood possessed extrajudicial knowledge which caused him to ignore the possibility that the defendant had sold this particular gun when he was still a licensed firearms dealer. The defendant's argument lacks merit.
 
 
 8
 Information obtained through a judicial proceeding is not a basis for recusal. Rather, "[t]he alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." United States v. Grinnell Corp., 384 U.S. 563, 583 (1966). In the case at bar, the PSR contained the following information about the incident:
 
 
 9
 10/14/93 - ... Kentucky State Police Trooper David Ross responded to a domestic disturbance call at the Hinkle residence. As Trooper Ross approached Hinkle on his front porch, Hinkle aimed the firearm at him. Trooper Ross scuffled with Hinkle and was shot three times in the back with a Smith and Wesson .38 caliber revolver.... A firearms trace of the firearm reflects that it was shipped by Laurel Ridge Distributors (now known as Pennsylvania Police Supply) to Ratliff's Firearms who received it on August 23, 1983. Again, there are no records to verify who Dewey Ratliff sold the firearm too [sic] originally. At this time, Trooper Ross's medical status is that he is partially paralyzed from the gunshot trauma.
 
 
 10
 The facts surrounding the incident were not in dispute and the record in this case contained all of the basic information, including Trooper Ross's partial paralysis. Thus, there is no basis for questioning Judge Hood's impartiality merely because he witnessed the construction of a ramp. See United States v. Story, 716 F.2d 1088, 1090-91 (6th Cir. 1983); Price Bros. Co. v. Philadelphia Gear Corp., 649 F.2d 416, 420-21 (6th Cir.), cert. denied, 454 U.S. 1099 (1981).
 
 
 11
 Furthermore, there is no indication that Judge Hood ignored the possibility that the defendant was still a licensed dealer when he sold the gun used to shoot Trooper Ross. Judge Hood specifically noted that the defendant failed to maintain proper records of the guns he sold, and it is undisputed that the defendant did not submit any records to show when or to whom he sold this particular gun.
 
 
 12
 Additionally, we hold that in calculating the defendant's sentence, Judge Hood properly considered the incident involving the shooting of Trooper Ross because it was relevant conduct. A violation of 18 U.S.C. Sec. 922(a)(1)(A) is listed under U.S.S.G. Sec. 3D1.2(d) (Nov. 1993) as requiring the grouping of multiple counts. According to U.S.S.G. Sec. 1B1.3(a)(2), for an offense for which Sec. 3D1.2(d) requires the grouping of multiple counts, relevant conduct includes all acts and omissions "that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. Sec. 1B1.3(a)(2) (Nov. 1993). The PSR demonstrates (and the defendant does not deny) that, from 1983 onward, the defendant routinely sold firearms without keeping proper records. When the defendant sold the gun that was used to shoot Trooper Ross, the defendant might have been licensed; however, since he failed to keep the records he was required to keep during the years that he was licensed, he cannot demonstrate that the gun used to shoot Trooper Ross was sold during those years. The sale of that gun is thus relevant conduct to be considered for purposes of sentencing because whether it was sold without record while the defendant was licensed or sold without record while the defendant was not licensed, the sale was part of the defendant's ongoing conduct of selling guns in violation of federal law.
 
 
 13
 Finally, the record demonstrates that Judge Hood based the sentence on all of the relevant facts. In the sentencing hearing, Judge Hood recognized that several other firearms sold by the defendant had been recovered over a wide geographic area and from groups or individuals associated with violent and illegal acts. Judge Hood also considered the defendant's age, but noted that the defendant had illegally sold at least 92 firearms in a little over one year's time. We hold that a reasonable person would not question Judge Hood's impartiality.
 
 
 14
 For the forgoing reasons, we AFFIRM the sentence of the district court.
 
 
 
 *
 The Honorable Charles W. Joiner, United States District Judge for the Eastern District of Michigan, sitting by designation