*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0062P (6th Cir.)
File Name: 01a0062p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
      *Plaintiff-Appellee,*

            *v.*                                 No. 98-6274

ERIC WILLIAM KINGSLEY,
            *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 97-00125—James H. Jarvis, District Judge.

Argued: November 1, 2000

Decided and Filed: March 7, 2001

Before: KRUPANSKY, BATCHELDER, and GILMAN,
Circuit Judges.

———————————

**COUNSEL**

**ARGUED:** Nikki C. Pierce, FEDERAL DEFENDER
SERVICES, Greeneville, Tennessee, for Appellant. Mary M.
Aubry, ASSISTANT UNITED STATES ATTORNEY,
Knoxville, Tennessee, for Appellee. **ON BRIEF:** Nikki C.
Pierce, FEDERAL DEFENDER SERVICES, Greeneville,

Tennessee, for Appellant.  Mary M. Aubry, ASSISTANT UNITED STATES ATTORNEY, Knoxville, Tennessee, for Appellee.

KRUPANSKY, J., delivered the opinion of the court, in which BATCHELDER, J., joined.  GILMAN, J. (pp. 22-25), delivered a separate concurring opinion.

_____

**OPINION**

_____

KRUPANSKY, Circuit Judge.  The defendant-appellant, Eric William Kingsley ("Kingsley"), has mounted attacks on review, which he failed to preserve below, against the district court's imposition of two special conditions of his three-year supervised release period scheduled to commence accruing upon the expiration of his seventy-eight month imprisonment term for possession of firearms after incurring a felony conviction.[1]  18 U.S.C. § 922(g)(1).  By reason of the defendant's crime of conviction, coupled with his weighty twenty-year record of criminal arrests, charges, and convictions evidencing, among other things, habitual alcoholic and/or narcotic intoxication, recidivist illegal possession of controlled substances, a pattern of reckless vehicular crimes, and serious multiple firearms

_____

[1]The governing statute pronounces, in relevant part:

It shall be unlawful for any person –

(1) who has been convicted in any court of, [sic] a crime punishable by imprisonment for a term exceeding one year; . . .

to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1).

transgressions,[2] plus demonstrated psychological abnormalities, the sentencing court ordered, among other things, that, during his supervised release, Kingsley (1) shall, in the sole discretion of his probation officer, submit to random warrantless searches of his person and/or effects; and (2) shall not at any time operate a motor vehicle. Although the defendant neglected to oppose those mandates before the sentencing forum, he has alleged for the first time before this appellate reviewing panel that the trial judge failed to articulate adequate factual findings supportive of the two subject special conditions of supervised release; and that those edicts unreasonably intruded upon his exercise of personal liberty to a degree unjustified by any legitimate penal objective, in light of his crime of conviction and other relevant factors.

On December 17, 1996, the defendant, a 36-year-old unemployed "gun collector" with a high school equivalency degree and an extended history of chronic substance abuse, severe psychological disorders, and life-threatening felonious conduct, who was contemporaneously on state probation for a drugs-and-weapons conviction and was simultaneously under state indictment for controlled substance and vehicular transgressions, forcibly entered the Oak Ridge, Tennessee, mobile home of Jerry Galloway, while armed with a shotgun and a pistol. Kingsley found Galloway sitting on a sofa. The defendant pointed his shotgun at Galloway, and accused him of having stolen one of Kingsley's many unlawfully-possessed firearms. When Galloway attempted to telephone emergency assistance, Kingsley discharged his shotgun into the davenport, near the victim's head. Kingsley then warned Galloway that he would aim the next shell fired at Galloway's heart. The defendant ordered Galloway to remove his television set to Kingsley's van, evidently to serve as compensation for the allegedly converted firearm. During

---

[2]The defendant's life of crime, evolved herein, earned him assignment to criminal history category VI, the highest possible criminal history rank existing under the federal Sentencing Guidelines. See note 9 below.

that procedure, Kingsley fired his shotgun on at least two additional occasions. As Galloway carried his television to Kingsley's vehicle, he observed Kingsley moving Galloway's battery charger, which he also apparently intended to seize. Galloway perceived Kingsley retrieving a pistol from underneath his left shoulder. Immediately thereafter, Kingsley accidently discharged a round from that weapon into his own foot.

Momentarily, Kingsley observed approaching police vehicles, which prompted him to flee the trailer park in his truck. Investigating Officer Bjelland of the Oak Ridge Police Department detected gunshot holes in the trailer's front door, its floor, the sofa, and the window behind the sofa; as well as expended shotgun casings. On the ground approximately 25 to 30 yards outside the mobile home, the patrolman discovered a shotgun, the victim's television, and fresh blood. Subsequently, fellow peace officers apprehended Kingsley on the highway. Their search of his vehicle produced ten additional firearms, including both foreign and American-made pieces.[3]

On May 29, 1997, during the pendency of state charges against Kingsley related to the December 17, 1996 incident (to wit, aggravated assault, aggravated kidnaping, aggravated robbery, aggravated burglary, and "going armed"), the defendant's neighbor complained to the Oak Ridge Police Department that a stray bullet had penetrated his residence's window. The caller had proximately observed Kingsley running from his parents' nearby home while carrying a firearm. Kingsley absconded to his own house while still armed with that weapon. The neighbor then heard several additional gunshots. In response to that citizen's report, the police department dispatched investigators to the scene.

---

[3]The constables seized a Colt .38 Special; a Smith & Wesson 686-3, model 357; a Smith & Wesson .44 Magnum, model 29; a Remington Viper, model 522; a Mossberg, model 380; two Russian SKS automatic assault rifles; a Volunteer Enterprise, Commando Mark; a Marlin 30-30 rifle; and a Mossberg 12-gauge shotgun.

unlawfully discharging a pollutant. *See United States v. Voda*, 994 F.2d 149 (5th Cir. 1993).

I believe that the relationship between the driving prohibition imposed on Kingsley and his firearms conviction is closer to the disconnect found in the Fifth Circuit case than to the tailored fit found in the Sixth Circuit cases set forth above. Accordingly, I would be inclined to hold that the district court abused its discretion by imposing the prohibition on driving as a condition of Kingsley's supervised release. But Kingsley did not raise an objection to the imposition of this special condition of supervised release before the district court. We therefore cannot set aside the district court's ruling unless we find that its imposition constitutes plain error. *See United States v. Koeberlein*, 161 F.3d 946, 949 (6th Cir. 1998). "The Supreme Court and numerous federal courts have repeatedly stated that the plain error doctrine is to be used sparingly, only in exceptional circumstances, and solely to avoid a miscarriage of justice." *United States v. Gold Unlimited, Inc.*, 177 F.3d 472, 483 (6th Cir. 1998) (quoting *United States v. Hook*, 781 F.2d 1166, 1172-73 (6th Cir. 1986) (citations omitted)). Because I find no such exceptional circumstances in the present case, despite my disagreement with the result reached, I reluctantly concur in the judgment of the court as to this fifth special condition of Kingsley's supervised release.

effective manner") and U.S.S.G. § 5D1.3(b)(2) (by involving "no greater deprivation of liberty than is reasonably necessary").

I believe that the incidental transportation of illegally possessed firearms is too tangential to Kingsley's criminal offense at issue to justify a total ban on his driving. Although Kingsley's criminal history includes five incidents of arrests for Driving While Intoxicated, his last such offense occurred over four years before the crime in question. Yet the court declares that "the vexing 'history and characteristics of the defendant' establish that furtherance of the paramount governmental interest in protection of public safety, standing alone, could justify the subject driving proscription." Op. at 17. I believe that such a gratuitous statement has absolutely no support under the U.S. Sentencing Guidelines, and none is cited by the court.

There are relatively few cases in this circuit that examine the necessary nexus between the nature and circumstances of an offense and the condition of supervised release. All of these cases affirm the linkage. *See, e.g., United States v. Berridge*, 74 F.3d 113 (6th Cir. 1996) (upholding the prohibition on a former bank vice president who pled guilty to fraudulent loan activity from obtaining employment in the banking industry during his period of supervised release); *United States v. Szenay*, No. 98-1116, 1999 WL 426886, *3 (6th Cir. June 15, 1999) (unpublished table decision) (upholding the special condition of prohibiting the defendant from incurring any credit card charges without the approval of the probation officer where the conviction was for credit card fraud); *United States v. Worthington*, 1998 WL 279379, *17 (6th Cir. May 21, 1998) (unpublished table decision) (upholding the prohibition on possessing a pager or cell phone during supervised release for a defendant convicted of a drug conspiracy). A Fifth Circuit case, on the other hand, held that the district court abused its discretion by imposing a prohibition on the possession of a firearm as a condition of supervised release for a defendant who was convicted of

Kingsley's mother informed them that her son had discharged a bullet into her residence's wall. Immediately thereafter, the authorities arrested Kingsley. A subsequent warrant search of his domicile led to the confiscation of a cache of eleven firearms, including some of foreign manufacture.[4]

On October 7, 1997, while Kingsley was detained in state custody on charges anchored in the above-described December 17, 1996 and May 29, 1997 criminal episodes, a federal grand jury indicted him on two counts under 18 U.S.C. § 922(g)(1). (See note 1 above). Count one charged the defendant with unlawful possession of the ten firearms seized from his van on December 17, 1996. Count two charged him with illegal possession of the eleven armaments removed from his residence on May 29, 1997.[5] On December 15, 1997, Kingsley and the United States executed a Fed. R. Crim. P. 11 plea agreement, whereby the defendant promised to plead guilty to count one of the indictment, whereas the government, in exchange, would dismiss count two. That settlement contract further stipulated, *inter alia*, that "[t]he Court may impose any lawful term of supervised release;" and that "[t]he District Court will determine the [defendant's] appropriate sentence under the Sentencing Guidelines, and this determination *will be based upon the entire scope of the defendant's criminal conduct, criminal history*, and pursuant to other factors and guidelines set forth in the Sentencing Guidelines." [Sic]. (Emphasis added).

---

[4] Those eleven weapons consisted of two Marlin .22 caliber rifles; a Marlin 30-30 rifle; a Para-Ordinance pistol; a Mossberg 12-gage shotgun; a Savage .270 caliber rifle with scope; a Remington 30-06 rifle with scope; a Raven pistol with magazine; a Mauser pistol with magazine; a sawed-off 12-gauge shotgun; and an assault rifle of unidentified foreign origin.

[5] Following return of the instant federal indictment, the Tennessee court dismissed the state charges stemming from the December 17, 1996 and May 29, 1997 incidents.

On May 19, 1998, the probation department completed Kingsley's Pre-Sentence Report ("PSR"), which chronicled the defendant's persistent pattern of vehicular offenses, substance abuse crimes, and other safety-menacing or otherwise irresponsible anti-social peace infractions. Between April 13, 1977 (when he incurred, at age 16, his first criminal conviction, for marijuana possession), and the December 17, 1996 crime of conviction, Kingsley sustained *at least **fourteen** convictions for vehicular offenses*, including five counts of driving while intoxicated or "driving under the influence," three counts of reckless driving, one count of reckless endangerment, four counts of driving with a revoked license, and one count of leaving the scene of a traffic mishap; and *at least **seven** convictions for non-vehicular controlled substance offenses,* including one charge of marijuana possession, one count of stealing controlled narcotics from a drug store, one count of possession of those stolen pharmaceuticals, one charge of possessing synthetic narcotics, one charge of possessing Diazepam, one charge of vandalizing another's apartment while intoxicated, and one count of possession of Valium, Dilaudid, Methadone, and marijuana.

In addition, Kingsley's two-decade crime spree encompassed one conviction for interfering with police business; one conviction for simple assault; one conviction for attempting to break and enter a plumbing supply company with intent to commit larceny; and one count of "going armed."

Kingsley's *most recent* prior conviction for a serious *vehicular infraction* emanated from his November 14, 1992 arrest for driving recklessly, while under chemical influence and in the possession of Diazepam, without possessing a valid driver's permit. He was convicted on those charges on December 21, 1993, which preceded his December 17, 1996 crime of conviction by only slightly less than three years.

Even more revealing, and disturbing, were the defendant's *most recent* convictions for a prior *non-vehicular controlled*

The court describes at great length the *history and characteristics of the defendant* by detailing Kingsley's "two-decade crime spree." Op. at 6. Although I acknowledge that Kingsley's criminal history is hardly that of a model citizen, I believe that the court greatly overstates its case and makes a tenuous argument for the proposition that prohibiting Kingsley from driving is reasonably related to *the nature and circumstances of the offense* for which he was convicted. In fact, the court at one point makes the following statement, which implies that the language of § 5D1.3(b)(1)(A) can be read disjunctively instead of conjunctively: "Because special condition no. 5 was independently justified by *either* factor standing alone, *a fortiori*, it was legitimized by the aggregation of *both* factors." Op. at 17-18 (emphasis in original). I find no basis in the language of the section or in the rules of statutory construction that would allow us to apply either factor standing alone, and the court provides no justification for doing so.

The court also reasons that because Kingsley transported his "illegal arsenal of at least eleven firearms" to the residence of the victim in his truck on December 17, 1996, prohibiting Kingsley from driving reasonably relates to his offense. Op. at 17. But Kingsley was not arrested for the illegal possession of firearms until more than five months later, when the police obtained a search warrant and found the weapons in his home. Furthermore, under the court's logic, if a defendant like Kingsley had transported his "arsenal" of illegal weapons on a bus or subway, then a prohibition on the use of public transportation as a condition of supervised release would be reasonably related to the nature and circumstances of the offense. To me this makes little sense in light of the wording and purpose of U.S.S.G. § 5D1.3(b).

The court's opinion seems to be based on the assumption that Kingsley is beyond any hope of rehabilitation. It belittles the likelihood that prohibiting Kingsley from driving will detract from the stated purpose of both U.S.S.G. § 5D1.3(b)(1)(D) (by making it more difficult for the defendant to obtain "correctional treatment in the most

—————————————

**CONCURRENCE**

—————————————

RONALD LEE GILMAN, Circuit Judge, concurring.  I concur in the decision of the court to affirm the district court's imposition of the fourth special condition of Kingsley's supervised release, which authorizes random warrantless searches of Kingsley's person and effects in the discretion of his probation officer.  But I write separately to express my view that the fifth special condition of supervised release imposed by the district court – which prohibits Kingsley from operating a motor vehicle for three years – is a very questionable imposition under the U.S. Sentencing Guidelines.

Section 5D1.3(b) of the U.S. Sentencing Guidelines provides as follows:

> The court may impose other conditions of supervised release to the extent that such conditions (1) are reasonably related to (A) the nature and circumstances of the offense and the history and characteristics of the defendant; (B) the need for the sentence imposed to afford adequate deterrence to criminal conduct; (C) the need to protect the public from further crimes of the defendant; and (D) the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; and (2) involve no greater deprivation of liberty than is reasonably necessary for the purposes set forth above and are consistent with any pertinent policy statements issued by the Sentencing Commission.

Of particular importance is § 5D1.3(b)(1)(A), which mandates that conditions of supervised release must be reasonably related to "*the nature and circumstances of the offense and the history and characteristics of the defendant.*" (emphasis added).

*substance offense, **and** a weapons transgression*, each of which occurred on August 2, 1996, only approximately four and one-half months preceding his subject December 17, 1996 weapons offense.  On August 2, 1996, Kingsley appeared at the Oak Ridge police station to "discuss" the previous evening's encounter with Officer Martina and other lawmen.  The defendant boasted to Officer Martina that, because he had possessed an SKS automatic assault rifle during their recent confrontation, he "could have cut [Martina] in half" at that time.  Kingsley then replied affirmatively to Officer Martina's query whether he was currently armed.  A subsequent search of the defendant yielded a loaded Smith & Wesson .357 caliber Magnum handgun, together with 37 Valium tablets, 13 Dilaudid capsules, and a bottle of Methadone. Later, a consent search of Kingsley's residence produced a .44 caliber Magnum pistol, a nine millimeter handgun, an SKS automatic rifle, a .308 caliber rifle, a .22 caliber rifle, and a shortened 12-gauge shotgun.  Additionally, the suspect voluntarily furnished to law enforcement constables the combination to a house safe within which he had concealed three pounds of marijuana, 150 doses of Dilaudid, and an undetermined quantity of Methadone.[6]  Because the authorities deemed him to pose a danger to others, Kingsley incurred involuntary commitment to a mental health institution for an undisclosed duration.

The PSR further reported that, in addition to the *convictions* described above, Kingsley sustained additional *arrests and open criminal charges* which had not proceeded to judicial

———————————

[6]The defendant's actions of August 2, 1996 led to convictions in Tennessee court on November 13, 1996 for possession of controlled substances and "going armed." Kingsley was on state probation for those crimes when he committed the December 17, 1996 federal crime of conviction.  On August 6, 1997, the Tennessee court revoked his probation.

disposition.[7]   Only four months prior to his December 17, 1996 crime of conviction, on August 11, 1996, following a traffic stop, patrolmen arrested Kingsley for possession of a controlled substance with intent to distribute, driving under the influence of a controlled substance, and driving with a revoked license.  Those charges were pending in state court when he committed the federal weapons crime here in controversy.

A far more serious prior incident had transpired on November 16, 1992, when Kingsley was arrested for attempted first degree murder, driving under the influence of psychotropic chemicals, driving with a revoked license, and possession of a Schedule IV controlled substance.  On that day, a citizen reported to the police that Kingsley had, by telephone, repeatedly threatened to kill him.  Later that day, Kingsley committed a drive-by shooting from his vehicle by firing a twelve-gauge shotgun four times at that citizen's house. One round penetrated the target residence's outer wall and lodged in the bedroom wall, just several inches above its reclining occupant.  Officers dispatched to the crime scene observed a van fleeing the area.   When subsequently apprehended, that vehicle's operator, Kingsley, reeked of alcohol, registered a .11 blood alcohol level on an intoxication test, and possessed Diazepam.  For unknown

---

[7] A court, in ascertaining a perpetrator's proper sentence, may consider any relevant material, including the contents of the PSR, which is "supported by some minimal indicium of reliability beyond mere allegation." *United States v. Dunlap*, 209 F.3d 472, 476 n.8 (6th Cir. 2000) (citation and internal quotes omitted).  Evidence germane to sentencing need only satisfy the "preponderance of the evidence" standard, rather than the "beyond a reasonable doubt" measure. *United States v. Gessa*, 57 F.3d 493, 496 (6th Cir. 1995); *United States v. Robison*, 904 F.2d 365, 371 (6th Cir. 1990).  Accordingly, prior criminal behavior by the defendant, which, as in the case *sub judice*, the defendant did not deny during his sentencing proceeding, and/or which was supported by information derived from a reliable source, is relevant to sentencing, even if that prior criminal conduct did not lead to a criminal conviction.

---

supervised release.  *See United States v. Worthington*, 145 F.3d 1335 (Table), 1998 WL 279379, at *17 & n.4 (6th Cir.), *cert. denied*, 525 U.S. 886 & 988 (1998).

Therefore, at this stage, it cannot be said that the district court committed "plain" error, or *any* error, on the subject record, by absolutely prohibiting Kingsley from driving a motor vehicle during his post-incarceration three-year supervised release term.  Given the defendant's direct use of his van in the commission of his offense of conviction, matched with overwhelming evidence within the sentencing record of his life-long pattern of dangerous vehicular offenses, overindulgence in drugs and alcohol, psychological maladjustment, and utilization of his vehicle to execute firearms offenses resembling the offense of conviction, any error appurtenant to the trial court's failure to state specific reasons for imposing the absolute driving ban was harmless.

Because the defendant has identified no "plain error" affiliated with the lower court's special conditions of supervised release nos. 4 and 5, his pretermitted attacks are non-cognizable on review.  *United States v. Saucedo*, 226 F.3d 782, 787 n.10 (6th Cir. 2000), *cert. denied*, 2001 WL 131641 (U.S. Jan. 8, 2001) (No. 00-7313).  Accordingly, the two challenged special conditions of supervised release are **AFFIRMED**.

judgmentally disoriented, as he has done repeatedly in the past. After all is said and done, the post-imprisonment three-year suspension of the defendant's driving privileges will be a comparatively modest cautionary prophylactic measure, given the total circumstances presented.

Kingsley has averred that, without at least a limited authorization to drive under restricted conditions, he will be unable to satisfy other court-imposed conditions of his supervised release, including participation in drug and alcohol, and mental health, treatment programs. However, even if, as asserted by the defendant's counsel at appellate oral argument, public transportation is unavailable in his rural locality, adequate practical transportation alternatives undeniably exist. For example, the defendant may walk, peddle a bicycle, or engage the driving services of a relative, friend, neighbor, or professional taximan, to travel to and fro his treatment sessions.

On the other hand, if, during his supervised release term, Kingsley is able to prove that he has been sufficiently rehabilitated to justify the partial or complete removal of the absolute driving ban, and/or that the absolute motorist prohibition somehow renders his participation in the court-ordered treatment programs impossible (as opposed to merely inconvenient), he can apply to the district judge for modification of that special condition of his supervised release. *See* 18 U.S.C. § 3563(c). Indeed, Kingsley's premature assaults against the blanket driving proscription are anchored in "contingent future events that may not occur as anticipated, or indeed may not occur at all," *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985) (citations omitted), namely that he will be *unable* to attain chemical dependency treatment and/or psychological counseling if he is precluded from driving; or that, under the circumstances which will prevail during his supervised release (including, but not necessarily limited to, his then-prevailing state of mental health and chemical dependency), a total driving ban will deprive him of more personal liberty than reasonably necessary to achieve the valid objectives of

reasons, on February 17, 1993, the prosecution dismissed the charges stemming from that incident.

The PSR also revealed that, on February 6, 1995, the defendant had been arrested for assault against his wife. That charges was also dismissed.[8]

Additional alarming information material to Kingsley's character and habits, which was especially pertinent to his chronic hard-core substance abuse and minacious emotional volatility, appeared within the PSR. Kingsley disclosed to his probation officer that, during his lifetime, he had experimented with virtually all types of controlled substances. He began smoking marijuana at age thirteen, and habitually consumed alcohol whenever he could afford it, although he disingenuously denied having an alcohol abuse problem. He had enrolled in a drug treatment program in early 1997, but terminated his participation therein against medical advice prior to its completion. The defendant's father reported that his son had received drug treatment at two rehabilitation clinics, and indicated that the defendant had a "short temper."

On September 14, 1998, the district judge presided over Kingsley's sentencing hearing. Neither prior to, nor during, that proceeding, did his attorney assert any written or oral opposition to anything contained within the PSR. Moreover, Kingsley attested, under oath, that he and his lawyer had reviewed the PSR; that he had no reason to challenge the accuracy of anything stated therein; and, moreover, that he personally believed that its contents were accurate. In response to direct questioning by the trial judge, Kingsley conceded that he had incurred five prior convictions for

---

[8] In addition to the May 29, 1997 incident which had been charged in the federal indictment *sub judice* together with the December 17, 1996 offense of conviction, Kingsley had been arrested on at least one other occasion *following* the December 17, 1996 episode. On July 14, 1997, he was arrested for assault and resisting arrest. The circumstances leading to that detention were not revealed in the PSR. However, that document disclosed that those charges were dismissed by reason of the instant federal prosecution.

driving under the influence of one or another variety of mind-altering substance; and that at the time of his subject December 17, 1996 arrest for illegal firearms possession, he was transporting ten guns inside his vehicle.

At the conclusion of the sentencing proceeding, the district judge committed Kingsley to the custody of the Bureau of Prisons for a term of 78 months,[9] to be followed by three years of supervised release. The judicially fashioned special conditions of Kingsley's supervised release included an absolute prohibition forbidding the driving of any motor vehicle for any reason, which element of the sentence was subsequently clarified to reflect that "[t]he defendant shall be prohibited from *operating a motor vehicle during his term of supervised release.*" The special conditions also incorporated a blanket subjection of the defendant to warrantless personal and property searches in his probation officer's discretion.[10]

---

[9]The probation department computed Kingsley's offense level points to total 19, and placed him in criminal history category VI, which together produced a guidelines sentencing range of 63 to 78 months of correctional confinement. U.S.S.G. § 5A (Sentencing Table). The defendant has not contested his imprisonment condemnation.

[10]From the bench, the trial judge recited Kingsley's special conditions of supervised release as follows:

> After you are released from prison you will be placed on supervised release for a term of three years. You will report to your Probation Officer within 24 hours of your release from prison. While on supervised release you will not commit another federal, state or local crime. You will comply with the conditions that have been adopted by this court under local Rule 83.10 which means, number one, you can't possess an illegal drug. You are not to drink any alcohol. You can't handle alcohol. You get in trouble every time you drink it, almost every time it seems like. You will not possess any illegal drugs.

> You will not own or possess a firearm or other dangerous weapon or destructive device. You will participate in a program for testing and/or treatment for drugs or alcohol abuse, as directed by your Probation Officer. You will be subject to screening for alcohol and illegal drugs, all during that period of

*Billy*, 160 F.3d 1131, 1137-39 (6th Cir. 1998) (explaining that the administrative suspension of a motorist's license comprises the "revocation of a privilege voluntarily granted" by the state) (citations omitted)).

At any rate, even assuming *arguendo* that some personal "right" of the defendant would be denied by the faulted driving prohibition, it nonetheless will not comprise a greater deprivation of personal liberty than is reasonably necessary to achieve the legitimate goals of supervised release,[15] in light of Kingsley's recidivist inclination to commit serious life-threatening vehicular offenses, often while chemically impaired and/or in the possession of firearms. Kingsley has repeatedly and conclusively demonstrated that, because of his mentally-destabilizing chemical dependencies, overall criminal tendencies, and generally erratic personality, he cannot be trusted to responsibly drive a vehicle at *any* time, for *any* reason. Indeed, his severe and chronic addictions to alcohol and narcotics, in tandem with his significant personality disorders and imbalanced psychology, should disqualify him from possessing driving authorization, even in the absence of his appalling driving record assembled to date.

In all events, the defendant's life-long behavior patterns have convincingly demonstrated that, if he is indulged with any degree of permission to operate a motor vehicle on the public highways, even for very specific and limited purposes, he will most likely violate that trust by using his vehicle to facilitate the commission of firearms or narcotics offenses or other criminal transgressions; and/or will menace community security by driving irresponsibly while inebriated or otherwise

---

[15]Even individual fundamental rights safeguarded by the United States Constitution may be denied or limited by judicially exacted special conditions of supervised release, as long as those restrictions are "directly related to advancing the individual's rehabilitation and to protecting the public from recidivism." *United States v. Ritter*, 118 F.3d 502, 504-05 (6th Cir. 1997). *See also, e.g., United States v. Hughes*, 964 F.2d 536, 542-43 (6th Cir. 1992) (sustaining a supervised release condition which constrained the probationer's exercise of his constitutional free association right).

Accordingly, the subject three-year complete suspension of Kingsley's driving privileges following his release from prison was reasonably related to *both* the nature and circumstances of his offense of conviction, and to his criminal history and personal characteristics. Because special condition no. 5 was independently justified by *either* factor standing alone, *a fortiori*, it was legitimized by the aggregation of *both* factors.

Furthermore, the driving restriction reasonably advanced legitimate goals of supervised release including assurance of community safety, crime deterrence, and rehabilitation of the felon, by restraining him from getting behind the wheel of a motor vehicle, an instrumentality through which he committed many of his multitudinous prior dangerous felonies, including the crime of conviction. *See United States v. Hughes*, 964 F.2d 536, 542 (6th Cir. 1992) (resolving that a condition of supervised release which restrained a former union official, who had been convicted of tax fraud and uttering false statements, from exercising decision-making authority over a union-financed political action committee, was justified to "protect union members and the general public from continued abuses by [the defendant]," and because "it will also rehabilitate [the defendant] by removing him from the environment that originally led to his criminal activity.").

Kingsley has also argued that the district judge's absolute disallowance of his operation of any automobile during his three-year supervised release term would constitute a greater deprivation of his personal liberty than reasonably necessary to achieve the valid objectives of supervised release. However, this reviewing court initially observes, as a seminal analytic point of departure, that operating a motor vehicle on the public thoroughfares, under *any* circumstances, is *not* a fundamental personal *right*, but instead is a mere societally-bestowed *privilege*, granted by the grace of the state, which an adult citizen must earn, and which the government can restrict or invalidate, even administratively, in the rational furtherance of a legitimate public purpose. *See Herbert v.*

The lower court's written judgment, journalized on September 21, 1998, modified and clarified those special conditions:

4. He [Kingsley] shall submit his person, residence, office or vehicle to a search conducted by any U.S. Probation Officer and such other law enforcement personnel as the probation officer may deem advisable, without a warrant.

5. The defendant shall be prohibited from operating a motor vehicle during his term of supervised release.[10]

---

supervised release. That will be for three years. *You will be forever prohibited from operating a motor vehicle again. You will be required to submit to a search conducted by any probation officer or any other law enforcement personnel while on probation that such officer may deem advisable without a warrant, and particularly if you are to be in a vehicle or in control of a vehicle.*

(Emphasis added).

However, as developed herein, the trial court's final judgment amended the two special conditions of supervised release here in controversy. The final, binding judgment in a criminal case consists of a written order "signed by the judge and entered by the clerk." Fed. R. Crim. P. 32(d)(1). Accordingly, in the instant cause, the provisions of the final written judgment supersede any inconsistent prior remarks made on the record by the sentencing court. *Cf. Atlantic Richfield Co. v. Monarch Leasing Co.*, 84 F.3d 204, 207 (6th Cir. 1996).

[11] The balance of the "Special Conditions of Supervised Release" segment of the written judgment posited:

While on supervised release, the defendant shall not commit another federal, state, or local crime, shall comply with the standard conditions that have been adopted by this Court in Local Rule 83.10, and shall not illegally possess a controlled substance.

He shall refrain from any unlawful use of a controlled substance.

In addition, he shall comply with the following special

On review, the defendant has, for the first time, assailed special conditions 4 and 5 of his supervised release. Ordinarily, an appellate bench scrutinizes a sentencing court's imposition of special conditions of supervised release for abuse of discretion. *United States v. Ritter*, 118 F.3d 502, 504 (6th Cir. 1997). On "abuse of discretion" review, "where a condition of supervised release is reasonably related to the dual goals of probation, [namely] the rehabilitation of the defendant and the protection of the public, it must be upheld." *Id.* (*quoting United States v. Bortels*, 962 F.2d 558, 560 (6th Cir. 1992)). The rigorous "abuse of discretion" standard permits reversal of a district court's directive only in comparatively extreme circumstances.[12]

---

conditions:

1. He shall not own or possess a firearm, dangerous weapon, or destructive device.
2. He shall participate in a program of testing and treatment for drug and/or alcohol abuse, as directed by the probation officer, until such time as he is released from the program by the probation officer.
3. He shall participate in a program of mental health treatment, as directed by the probation officer, until such time as he is released from the program by the probation officer. He shall waive all rights to confidentiality regarding mental health treatment in order to allow release of information to the supervising U.S. Probation officer and to authorize open communication between the probation officer and the mental health treatment provider.
[Special conditions 4. and 5., quoted above].

Title 18 U.S.C. Sections 3565(b) and 3583(g) require mandatory revocation of supervised release for possession of a controlled substance or a firearm, or for refusal to comply with drug testing.

[12]"Generally, an abuse of discretion is evident 'when the reviewing court is firmly convinced that a mistake has been made. A district court abuses its discretion when it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard.'" *Graham-Humphreys v. Memphis Brooks Museum of Art*, 209 F.3d 552, 560 (6th Cir. 2000) (brackets omitted) (*quoting Romstadt v.*

sentencing transcript, its precise reasons for ordering that special condition, was harmless.

Likewise, no plain error infected the sentencing court's absolute suspension of Kingsley's driving privileges during his three-year span of supervised release. The defendant has contended, for the first time on appeal, that the instant driving prohibition constituted plain error because it purportedly was unrelated to his crime of conviction, to wit, possession of firearms as a felony offender. However, "[t]he court may impose other conditions of supervised release to the extent that such conditions (1) are reasonably related to (A) *the nature and circumstances of the offense* **and** *the history and characteristics of the defendant*." U.S.S.G. § 5D1.3(b) (emphases added); *see also* 18 U.S.C. § 3553(a)(1). The court-ordered driving ban was reasonably related to Kingsley's demonstrative *past* wanton automotive violations, including multiple episodes of reckless operation while chemically impaired and/or in the possession of dangerous weapons. Indeed, the vexing "history and characteristics of the defendant" establish that furtherance of the paramount governmental interest in protection of public safety, standing alone, could justify the subject driving proscription.

Additionally, the district court's ban on the defendant's probationary operation of motorized vehicles was independently supported by "the nature and circumstances of the offense" *of conviction*. On December 17, 1996, using his truck, Kingsley had stored and transported an illegal arsenal of at least eleven firearms to the residence of his victim. He actively deployed two of those armaments to unlawfully threaten, intimidate, and coerce his victim into surrendering items of personal property. The defendant also intended to transport  that extorted personalty in his motor vehicle. Although the use of his van was not an essential element of the instant offense of possessing firearms as a convicted felon, that vehicle's involvement was nonetheless an integral "circumstance of the offense" which materially contributed to its overall "nature." *See* 18 U.S.C. § 3553(a)(1); U.S.S.G. § 5D1.3(b).

probation officer, during the defendant's supervised release, advanced the legitimate goals of probation, and was supported by the instant record with reference to the § 5D1.3(b) factors. The district court crafted the blanket search authorization as a necessary and justifiable means to enforce its proscriptions against Kingsley's possession of intoxicants, weapons, and/or other contraband or criminal instrumentalities; and to enable the detection of evidence of criminal activity or other probation violations. Both of those purposes related directly to the defendant's rehabilitation and the hindrance of his future criminal activity. Equally evident, and of equal importance, was the district court's correct determination that the random search proviso would be essential for the protection of the probation officer's personal safety, as well as that of ordinary citizens who might come into contact with this potentially dangerous felon.

Kingsley's crime of conviction implicated the illegal possession of multiple dangerous weapons. His prodigious twenty-year record of violent, reckless, and otherwise serious criminal activities, his lifetime abuse of omnifarious rationality-disabling and intellect-damaging intoxicants, his regular manifestations of troubling psychological derangement and emotional debilitation, and his customary total disregard of the law, cumulatively betrayed a dangerous anti-social personalty potentially capable of any act of violence or felonious behavior. At minimum, this defendant has proven his propensity to habitually possess, and misuse, alcohol, narcotics, and weapons, with recurring disastrous results. Accordingly, special condition no. 4 was reasonably related to the nature and circumstances of his subject offense, his personal history and characteristics, deterrence of future recidivist felonious actions, rehabilitation of the offender, and protection of public safety. It imposed no greater liberty deprivation than necessary to achieve those valid objectives. *See United States v. Martin*, 25 F.3d 293, 296 (6th Cir. 1994) ("A probation officer need not have a warrant to conduct a search of a probationer where the probation officer is properly carrying out her official responsibilities.") (citations omitted). Any error in the district court's failure to articulate, on the

Moreover, when, as in the case *instanter*, the defendant *neglected to preserve*, in the trial court, proper objection(s) to those special conditions, and/or to allege any deficiency in the lower court's supporting findings, an appellate court examines those belatedly-faulted special conditions and affiliated findings pursuant to the *heightened* "plain error" measure. *See* Fed. R. Crim. P. 52(b); *United States v. Olano*, 507 U.S. 725, 733-37 (1993). "To establish plain error, a defendant must show (1) that an error occurred in the district court; (2) that the error was plain, *i.e.*, obvious or clear; (3) that the error affected defendant's substantial rights; and (4) that this adverse impact seriously affected the fairness, integrity or public reputation of the judicial proceedings." *United States v. Koeberlein*, 161 F.3d 946, 949 (6th Cir. 1998) (citations omitted), *cert. denied*, 526 U.S. 1030 (1999). *See also United States v. Hayes*, 171 F.3d 389, 391-92 (6th Cir. 1999) (explaining that the reviewing court's exercise of power to notice and correct procedurally forfeited plain errors which have adversely affected the appellant's substantial rights is entirely discretionary).

"The court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence," including its rationale for mandating special conditions of supervised release. 18 U.S.C. § 3553(c); *United States v. Berridge*, 74 F.3d 113, 118-19 (6th Cir. 1996). Nevertheless, a sentencing court's failure to expressly explain its reason(s) for exacting a particular special condition of supervised release will be deemed *harmless error* if the supporting reasons are evident on the overall record, and the subject special condition is related to the dual major purposes of probation, namely rehabilitation of the offender and enhancement of public safety. *Ritter*, 118 F.3d at 504; *Berridge*, 74 F.3d at 118-19.

---

*Allstate Ins. Co.*, 59 F.3d 608, 615 (6th Cir. 1995)). *See also Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996) ("Abuse of discretion is defined as a definite and firm conviction that the trial court committed a clear error of judgment.") (citation omitted).

General factors material to the trial court's determination of an appropriate criminal sentence include:

(1) *the nature and circumstances of the offense **and** the **history and characteristics of the defendant***;
(2) the need for the sentence imposed –
   (A) *to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense*;
   (B) *to afford adequate deterrence to criminal conduct*;
   (C) *to protect the public from further crimes of the defendant*; and
   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

18 U.S.C. § 3553(a).  (Emphases added).

Additionally, Congress has directed that any special (that is, non-mandatory) condition of supervised release[13] must satisfy three requirements:

The court may order, as a further condition of supervised release, to the extent that such condition –

(1) is reasonably related to the factors set forth in [18 U.S.C.] section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D) [quoted above];

(2) involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D) [quoted above]; and

---

[13]Congress has specified a variety of explicit mandatory conditions of any term of supervised release, none of which is implicated in the action *sub judice*.  *See* 18 U.S.C. § 3583(d).

  (3) is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. § 994(a);

. . . any other condition it considers to be appropriate.

18 U.S.C. § 3583(d).

The November 1, 1997 version of the United States Sentencing Guidelines ("U.S.S.G."), which governed Kingsley's sentencing, paraphrased the above-quoted portion of 18 U.S.C. § 3583(d), and its incorporation of 18 U.S.C. § 3553(a)(1) & (2)(B)-(D), as follows:

*The court may impose other [non-mandatory] conditions of supervised release to the extent that such conditions* (1) *are reasonably related to* (A) *the nature and circumstances of the offense and the history and characteristics of the defendant*; (B) *the need for the sentence imposed to afford adequate deterrence to criminal conduct*; (C) *the need to protect the public from further crimes of the defendant*; and (D) the need to provide the defendant with medical care, or other correctional treatment in the most effective manner; and (2) *involve no greater deprivation of liberty than is reasonably necessary for the purposes set forth above* and are consistent with any pertinent policy statements issued by the Sentencing Commission.[14]

U.S.S.G. § 5D1.3(b) (eff. Nov. 1, 1997). (Emphases added).

The trial court's special condition no. 4, which authorized, in the sole discretion of the defendant's probation officer, the random warrantless search of the defendant, his premises, and/or his property, conducted by the probation officer and/or any law enforcement personnel enlisted for that task by the

---

[14]The defendant has cited no U.S.S.G. Policy Statements as purportedly in conflict with either of the two special conditions of supervised release which he has challenged.