474

**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Jacob WILSON, Defendant–Appellant.**

No. 99–2280.

United States Court of Appeals,
Sixth Circuit.

May 14, 2001.

Before KRUPANSKY, BOGGS, and BATCHELDER, Circuit Judges.

PER CURIAM.

The defendant-appellant, Jacob Wilson ("Wilson"), a black South African citizen, has contested his jury conviction for possession of heroin with intent to distribute in violation of 21 U.S.C. § 841(a)(1), importation of heroin in offense to 21 U.S.C. § 952, and fraudulent creation of a non-immigrant visa in impingement of 18 U.S.C. § 1546(a). He has asserted that the trial court denied him the equal protection of the laws, and a fair trial, by permitting the Assistant United States Attorney ("AUSA") to peremptorily strike the sole African–American member of the prospective juror panel, in purported affront to *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Although the defendant had generally opposed, before the trial court, the government's subject peremptory challenge, he has, on appeal, advanced two specific assignments of error which he did not preserve below: (1) that the trial court should have discredited the government's proffered race-neutral reason for exercising the challenged strike because the prosecution had permitted the impanelment of an allegedly similarly-situated Caucasian juror,[1] and (2) the district

---

1. In fact, the defendant had merely vaguely    asserted in his appellant's brief that three

court, in rejecting the defendant's opposition to the prosecution's removal of the black venireman, had neglected to make sufficient factual findings on the record which supported the conclusion that the faulted juror challenge was untainted by color-driven discrimination.

The facts underlying Wilson's prosecution and conviction were not directly material to the subject appeal. Briefly summarized, a joint investigation by the United States Customs Service and the Drug Enforcement Administration disclosed that Wilson had imported approximately 365 grams of heroin from the Philippines into Flint, Michigan, by shipping it, via Federal Express, to his girlfriend's mother's home. Additionally, Wilson had obtained a non-immigrant visa to enter the United States by furnishing false employment and residency information to the American Embassy in Pretoria, South Africa. Following the jury's guilty verdict on all charges, the district court imposed concurrent 78–month terms in the custody of the United States Bureau of Prisons on each of the three counts of conviction, to be followed by four years of supervised release, plus a $300 mandatory assessment.

The instant appeal implicates the government's exercise of a peremptory juror strike. "It is settled that the Constitution's guarantee of equal protection ensures that a party may not exercise a peremptory challenge to remove an individual on account of that person's race." *McCurdy v. Montgomery County, Ohio,* 240 F.3d 512, 521 (6th Cir.2001) *(citing, inter alia, Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986)). "A district court's ruling on whether the exercise of a peremptory challenge violates equal protection is entitled to 'great deference,' and we may not disturb its judgment unless it is clearly erroneous." *Id.* (citation omitted).

Proving a *Batson* violation by a prosecutor requires a three-part inquiry. Initially, the defendant must produce *prima facie* proof of an impermissible racial motive animating the government's release of a prospective juror, which can be accomplished by evincing three elements, namely "1) that the defendant is a member of a cognizable racial group; 2) that the prosecutor has exercised peremptory challenges against members of the defendant's race; and 3) that the relevant circumstances raise an inference of purposeful discrimination."[2] *United States v. Ferguson,* 23 F.3d 135, 141 (6th Cir.1994) (citations omitted). "If the claimant establishes a *prima facie* case, the party exercising the peremptory must proffer a race-neutral expla-

---

unidentified Caucasian members of the jury panel, each allegedly having familial relationships to persons "who had encounters with law enforcement," had not been excused, despite the prosecutor's possession of three unused peremptory challenges. However, a review of the lower court record disclosed that only one Caucasian juror familially related to a person who had incurred a prison sentence actually sat on the trial jury. Thus, the defendant has not adequately framed the subject contention, and this reviewing court could elect to discard it under Fed. R.App. P. 28(a)(5)-(9) & (e), without analysis of its merits, by reason of its inadequate development. *See, e.g., United States v. Brown,* 151 F.3d 476, 487 (6th Cir.1998). Nonetheless, in the interests of substantial fairness, this panel will, in the exercise of its discretion, construe the defendant's subject contention as having averred that the government exhibited a discriminatory purpose by striking the black jury panelist while tolerating the seating of an allegedly similarly-situated white juror. *See id.; Bush v. Dictaphone Corp.,* 161 F.3d 363, 366 (6th Cir.1998).

2. *See Powers v. Ohio,* 499 U.S. 400, 402, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991) (liberalizing, in proper cases, the *prima facie* proof requirements under *Batson* to include ostensibly race-based prosecutorial rejections of jurors irrespective of the race of the defendant).

nation. *This non-racial explanation need not be particularly persuasive, or even plausible, so long as it is neutral.* After the defending party offers its race-neutral justification, *the challenging party must demonstrate that the purported explanation is merely a pretext for a racial motivation.* As with discrimination claims generally, *the ultimate burden of persuasion always rests with the party challenging the peremptory."* McCurdy, 240 F.3d at 521 (emphases added; citations and quotes omitted).

In the action *sub judice,* the 28–person prospective juror pool included one African–American, whom the district court had designated "No. 109." The AUSA removed No. 109 from the jury by the exercise of his second peremptory challenge. Wilson's attorney objected to that strike, arguing that the circumstances implied a racial motive for the government's election. In response, the prosecutor explained that, during *voir dire* examination, the black venireman had revealed that three of his relatives had served prison sentences for criminal convictions—(1) his uncle, for a narcotics conviction; (2) a brother-in-law, for a breaking and entering conviction; and (3) another brother-in-law, for a conviction of a nature unknown to the prospective juror. The defense retorted that No. 109 had attested to his belief that he could decide the instant case fairly and impartially irrespective of the criminal histories of his relatives. Nonetheless, the district judge rejected the defense's *Batson* claim, concluding: "I believe that the government has advanced sufficient reason other than some racially discriminatory motive to excuse the juror from the panel. But, your objection is noted, it's on the record."

During the *voir dire* proceeding, Wilson did not offer any further evidence to contravene the credibility of the United States' articulated rationale; nor did he directly assail the sufficiency of the presiding judge's findings in support of his conclusion that the defendant had not persuasively refuted the prosecution's race-neutral reason for the attacked peremptory removal.[3]

In the subject appeal, the United States has conceded "that the defense established a prima facie case under *Batson.*" Government's brief, page 8. The defendant has not directly contested the facial race-neutrality of the prosecution's proffered reason for disqualifying No. 109. Instead, Wilson has mounted his instant appellate challenge at the final phase (stage three) of the three-step *Batson* paradigm, by contending that (1) the AUSA's failure to strike a white juror who was allegedly situated similarly to No. 109 disproved the government's purported race-neutral pur-

---

**3.** An objection which an appellant neglected to properly preserve in the trial court is deemed forfeited, and thus non-cognizable upon review, unless the assailed action of the trial court constituted "plain error." Fed. R.Crim.P. 52(b); *United States v. Olano,* 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *United States v. Saucedo,* 226 F.3d 782, 787 n. 10 (6th Cir.2000), *cert. denied,* 531 U.S. 1102, 121 S.Ct. 838, 148 L.Ed.2d 718 (2001). " 'To establish plain error, a defendant must show (1) that an error occurred in the district court; (2) that the error was plain, *i.e.,* obvious or clear; (3) that the error affected defendant's substantial rights; and (4) that this adverse impact seriously affected the fairness, integrity or public reputation of the judicial proceedings.' *United States v. Koeberlein,* 161 F.3d 946, 949 (6th Cir.1998) (citations omitted), *cert. denied,* 526 U.S. 1030, 119 S.Ct. 1278, 143 L.Ed.2d 371 (1999). *See also United States v. Hayes,* 171 F.3d 389, 391–92 (6th Cir.1999) (explaining that the reviewing court's exercise of power to notice and correct procedurally forfeited plain errors which have adversely affected the appellant's substantial rights is entirely discretionary)." *United States v. Kingsley,* 241 F.3d 828, 835–36 (6th Cir.2001).

pose for ejecting No. 109, and proved, in turn, that it was a mere pretext disguising an actual racially bigoted motive; and (2) the trial court should have developed, more fully on the record, its comparative evaluation of the merits of the United States' posture versus the alleged contrary proof of pretext. Because the defendant had neglected to frame either assignment of error before the district court, this reviewing court examines them for any identified "plain error" committed by that court. *See* note 3 above.

■ Wilson has not carried his burden of proving that "plain error" infected the district court's finding that the race-neutral reason offered by the government for its exclusion of No. 109 from the jury was not a mere pretext masking a racially discriminatory animus. The defendant has argued on appeal, for the first time, that the government's tendered legitimate reason was unpersuasive because the United States, despite its non-use of three available remaining peremptory strikes, had permitted a Caucasian venireperson, No. 30, who had disclosed that her brother-in-law had sustained drug convictions, to sit on the jury. However, No. 30 had only a *single relation-by-marriage* (a brother-in-law) who had done time in a penitentiary. By contrast, No. 109, the black venireman, had *three* convicted relatives who had served prison sentences, including two brothers-in-law and *a direct relation* (his uncle).

Thus, No. 109 was not similarly situated in all material respects to No. 30, and therefore No. 30 did not comprise a valid comparable. *See generally Mitchell v. Toledo Hospital,* 964 F.2d 577, 582–84 (6th Cir.1992). Hence, the government's assent to the inclusion of No. 30 among the trial jurors could not support a sustainable inference that a bigoted motive propelled its removal of No. 109 from the jury box, because a rational prosecutor could con-

clude that No. 109's unique circumstances objectively created an unacceptable risk that he might, even unknowingly, import extra-evidentiary adverse bias(es) into the jury deliberation chamber; whereas No. 30's situation objectively posed a lesser, acceptable degree of risk. At bottom, the prosecution offered a race-neutral reason for its dismissal of No. 109, which the trial court credited; and the defense has failed to rebut it persuasively with any evidence disproving the claimed reason or showing that it is a pretext for discrimination. Moreover, the district court did not plainly err by overruling the objection. *See Purkett v. Elem,* 514 U.S. 765, 768–69, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995).

■ Alternately, the defendant has contended that the district judge committed "plain error" by allegedly failing to articulate, on the record, sufficiently precise *factual findings* in support of his conclusion that no *Batson* transgression had transpired. Wilson has argued that the trial court should have expressly assessed the AUSA's credibility, and weighed the strength of his asserted justification against the conflicting evidence of discriminatory motivation, by enunciating evaluative findings on the court transcript. *See United States v. Hill,* 146 F.3d 337, 342–43 (6th Cir.1998). "The need for an explicit, on-the-record analysis of each of the elements of a *Batson* challenge is especially important when the purported race-neutral justification is predicated on *subjective explanations* like body language or demeanor." *McCurdy,* 240 F.3d at 521 (emphasis added; citation omitted).

In the case *instanter,* the prosecution advanced an *entirely objective* race-neutral rationale for striking No. 109. The district court did not sustain the AUSA's peremptory challenge of that potential juror anchored in any *subjective* explanation, such as a negative impression of the venire-

man's demeanor, body language, attentiveness, attitude, or credibility,[4] the accuracy and/or significance of which the trial judge might be required to evaluate. Rather, the district court credited the government's assertion that it excluded No. 109 by reason of an objective fact attested to by the subject panelist, namely that he had three relatives, including an uncle, who had incurred prison sentences.

In the case in controversy, at the ultimate stage of the *Batson* analysis, the lynchpin question posed for judicial resolution was whether the objectively race-neutral reason supplied by the prosecution for unseating No. 109 was worthy of credence—that is, whether the government's articulated rationale was its *actual reason* for the exercise of the peremptory challenge—as opposed to a mere pretext manufactured to conceal racial bias. By accepting the government's proffered reason, the trial jurist had patently adjudged the AUSA to be credible; no further findings were necessary to support that conclusion.

At any rate, given the overall posture of this case (especially the fact that Wilson failed to even suggest, let alone prove, any reason to disbelieve the AUSA's stated reason, other than by citing No. 109's representation during *voir dire* that he subjectively believed that he would be able to

decide the case without bias), any conceivable omission or other deficiency which may have arguably inhered in the trial court's supporting factual findings was, at worst, harmless error, because, as described above, the *voir dire* record reflected that the prosecutor possessed a valid, race-neutral objective reason for taking the challenged action.

Accordingly, because no reversible plain error contaminated the district court's finding that the prosecutor's dismissal of No. 109 did not offend *Batson,* Wilson's assignments of error are meritless. *Kingsley,* 241 F.3d at 840 (*citing United States v. Saucedo,* 226 F.3d 782, 787 n. 10 (6th Cir.2000), *cert. denied,* 531 U.S. 1102, 121 S.Ct. 838, 148 L.Ed.2d 718 (2001)). The defendant's judgment of conviction and sentence is AFFIRMED.

---

4. Although counsel for the United States had remarked, during argument before the trial judge, that No. 109's direct familial relationship to an individual who had served a prison sentence for a controlled substance conviction led him (the AUSA) to conclude that it "might influence his judgment despite his protestations to the contrary," he did *not* state a belief that No. 109 had falsely represented his intentions to adjudge the instant case fairly. Rather, the prosecutor had expressed his objective conclusion that a person in No. 109's position might be influenced by, for example, subconscious sympathy for individuals charged with drug crimes, and/or unperceived prejudice against the criminal justice system in such prosecutions, despite the venireman's honest belief that he would not be swayed by any latent partiality.

The prosecutor had also stated that he did not believe No. 109's representation that he had no reason "to have an emotional response to the issue of race." However, the trial court did not rely upon that statement as a basis for overruling the defendant's objection to the government's dismissal of No. 109. Instead, the district court solely credited the United States' assertion that the criminal histories of No. 109's relatives objectively justified his peremptory removal.