**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Thomas Keith SUGGS, Defendant–
Appellant.**

**Nos. 01–6080, 01–6081.**

United States Court of Appeals,
Sixth Circuit.

Oct. 29, 2002.

Before KENNEDY, NORRIS, and
BATCHELDER, Circuit Judges.

### OPINION

NORRIS, Circuit Judge.

Defendant Thomas Keith Suggs appeals
from the sentence imposed after he en-
tered into plea agreements to two separate
indictments that charged him with mail
fraud, wire fraud, and money laundering.
He raises two issues for our review. First,
he contends that the district court erred

when it increased his base offense level by four pursuant to U.S.S.G. § 2S1.1 because the "value of the funds" laundered exceeded $600,000. Second, he takes issue with the district court's decision to impose, as an additional condition of supervised release, that "defendant shall not have access to computers." We conclude that neither contention has merit and therefore affirm the judgment.

A twenty-five count indictment returned on December 19, 2000, charged defendant with making misrepresentations to individuals so that they would invest in a fraudulent computer resale scheme. According to the indictment, he assured them "that he had computer purchasing orders from various companies desiring to purchase computers from him." As part of the scheme, defendant "told potential investors that if they provided the financing to purchase computers the investors would receive profits in the approximate amount of one and one half to two times of the amounts invested within a two to three week period." To secure participation, defendant relied in part upon "false and fraudulent computer purchase authorizations."

He managed to dupe six people into giving him $466,846. He perpetuated his scam by making payments to early investors from funds received from later participants. He characterized these payments as profits. He returned approximately $170,000 to investors in order to encourage them to continue to invest. Rather than use the money to buy computers, however, defendant spent it on himself.

A second indictment charged defendant with crimes related to a business called Real Vision Technologies, Inc. Defendant was its president. According to the fifty-one count indictment, he told investors that the company was developing computer technology that could convert two-dimensional images into three-dimensional images. Real Vision allegedly required $250,000 to develop a prototype computer. Among other things, he told them that Viacom was interested in purchasing the technology for $6,000,000. To substantiate the claim, he produced fraudulent documents and misrepresented his own technical achievements. Once again, he met with some success: he convinced numerous people and companies to invest $250,700.

■ The first issue before us involves Sentencing Guideline § 2S1.1, which deals with the laundering of monetary instruments.[1] Among other things, § 2S1.1 provides a table to be used when the "value of the funds" laundered exceeds $100,000. U.S.S.G. § 2S1.1(b)(2). This table incrementally increases the offense level according to the amount of money laundered. If the amount was greater than $350,000, a three-level increase is in order; if more than $600,000, a four-level increase is warranted. The district court found at sentencing that the value of the funds at issue exceeded $600,000 and increased defendant's base offense level by four levels. Defendant contends that the amount was less than $600,000 and, consequently, his offense level should have only been increased by four levels. We review for clear error the district court's determination of value of the funds at issue. *United States v. Prince*, 214 F.3d 740, 769 (6th Cir.2000).

---

1. Defendant was sentenced pursuant to the Guidelines Manual in effect as of November 1, 2000. Since then, § 2S1.1 has been significantly overhauled. *See* Amendment 634. All references to § 2S1.1 in this opinion are to the version of the Guidelines Manual used to sentence defendant.

Defendant relies solely on the following language from *Prince:* "Section 2S1.1 of the Sentencing Guidelines prescribes that the sentencing court shall increase the base offense level for money laundering depending on the *amount of loss* involved." *Id.* at 769 (emphasis added). Defendant contends that the amount of loss should be pegged to the amount of restitution awarded: $490,685.

The pre-sentencing report concluded that $649,646 of fraudulently obtained funds were laundered. The district court addressed defendant's argument with respect to the appropriate amount during the sentencing hearing:

> [C]learly the amount for purposes of assessment of loss is not the same thing as restitution, because—let's give an example. We just had a case the other day in which a backhoe was taken. The backhoe was recovered, but the value of the loss, the loss in the case for purposes of guideline calculation was the value of the stolen backhoe ... about $60,000. The actual loss incurred by the person who owned it ... was $500, because they recovered the backhoe.... So in that case the restitution was $500. The value of the loss was $60,000. They're not one in the same. Now, I know we're talking about a different [Guideline] section, but just for purposes of analysis they're usually separate concepts.

Sentencing Hearing, August 14, 2002 at 11–12. After further discussion, the court concluded:

> [W]e often look at the amount of intended loss. The fact that someone later gives back a portion of the funds does not remove those funds from the calculation by the court. But in any event in this case, the amount would under any method of reasonable calculation exceeds $600,000....

Sentencing Hearing, August 14, 2002 at 19.

We agree with the view of the district court. As the term is used in § 2S1.1, the "value of the funds" does not equal the amount of restitution. Rather, it reflects the scope of the criminal enterprise. *See United States v. Thompson,* 40 F.3d 48, 51–52 (3d Cir.1994) (equating the value of the funds laundered with the amount of money derived from the scheme). In the instant case, the amount "returned" to investors by defendant was actually intended to promote the criminal enterprise by leading existing and future investors to believe that the scheme was legitimate. While it is undoubtedly fair that the defendant should not be ordered to repay amounts that he already returned as part of the restitution order, neither should he receive credit under § 2S1.1 for actions taken to further his criminal enterprise.

■ Turning to the second issue raised by defendant, we note as a preliminary matter that defense counsel did not object to the special condition of supervised release that prohibits defendant from having access to computers. Hence, we review for plain error. *United States v. Kingsley,* 241 F.3d 828, 835 (6th Cir.2001).

Pursuant to 18 U.S.C. § 3583(d), a district court may fashion further conditions of supervised release under the appropriate circumstances. Here, the condition was reasonable under the circumstances: defendant was on probation on state fraud charges at the time of the offense and his criminal history included other convictions for fraud. Moreover, the court defined its special condition in these terms:

> You're to have no access to computers. Now, I'm not talking about if you're a cashier somewhere that you can't use that computer, I'm really referring to no access to personal computers, computers

unassociated with a third party business, not your business, but if you're working for a company and you have to use their computer, you could have access to that computer, but you can have no access to a personal computer at all.

Sentencing Hearing, August 14, 2002, at 44.

Defendant's argument that an "absolute prohibition on his access to a personal computer" is overly restrictive misstates the condition, which explicitly permits him to access in the context of employment. In short, we detect no error, let alone plain error.

The judgment is **affirmed.**

